IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON R. JORDAN, | ) | |
|     Plaintiff, | ) | Case No. 7:16CV00468 |
| | ) | |
| v. | ) | |
| | ) | |
| T. LARGE, | ) | By: Elizabeth K. Dillon |
|     Defendant. | ) | United States District Judge |
| | ) | |

**MEMORANDUM OPINION**

Jason R. Jordan, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging claims against Defendant Sergeant T. Large for violation of his Eighth Amendment rights and retaliation while Jordan was incarcerated at the Red Onion State Prison. (Dkt. No. 1) Sgt. Large filed a motion for summary judgment, (Dkt. No. 17), to which Jordan responded, and this matter is ripe for disposition. Upon review of the record, the court concludes that Sgt. Large's motion for summary judgment is denied.

I.     BACKGROUND

The parties describe a distinctly and materially different series of events on July 15, 2016. Jordan alleges in his verified complaint that on July 15, 2016, he was placed in the shower while Sgt. Large searched his cell for contraband. After the cell search, Sgt. Large told Jordan that he found Jordan's radio and headphones, which Lieutenant Day "authorize[d]" him to intentionally break "because" Jordan had filed a prison grievance and lawsuit. Jordan and Sgt. Large had a heated exchange regarding the damage to his personal property which resulted in Jordan receiving a disciplinary charge for threatening bodily harm. Following the altercation, Sgt. Large and two other correctional officers escorted Jordan in full restraints from the D-6 pod to

the D-3 pod. The two correctional officers walked by Jordan's side while Sgt. Large followed immediately behind with a handheld camera to video the transport. As the group exited the D-6 pod into the prison yard en route to the D-3 pod, Jordan went out of view of all camera surveillance, at which time Sgt. Large "aggressively" kicked Jordan from behind, between the legs, causing serious pain to his testicles. Jordan claims that he did not display any physical or aggressive behavior to cause Sgt. Large to kick him. Rather, Jordan contends that Sgt. Large kicked him because Jordan had filed a grievance and lawsuit against prison officials. (Compl. at 3, Dkt. No. 1)

Jordan was then placed in the D-3 segregation housing unit, where he states he repeatedly asked for, but was denied, medical treatment. On July 16, 2016, Jordan spoke with a nurse during pill call about his injury because he had blood in his urine. Later that day, another nurse examined him briefly and advised him to file a sick call request form for further medical examination. The request was processed, and another nurse examined Jordan on July 20, 2016, during which examination Jordan alleges that the nurse "clearly" observed and "verified" the injury to Jordan's testicles which were swollen and had dried blood and pus. The nurse then requested that Jordan receive treatment from a doctor, including x-rays and medication for his pain. (Compl. at 4, Dkt. No. 1)

In his motion for summary judgment, Sgt. Large describes a different series of events on July 15, 2016. Sgt. Large contends that, at approximately 1:40 pm, Jordan was placed in the D-6 shower while correctional officers searched his cell for contraband. When Sgt. Large found and confiscated Jordan's radio, Jordan yelled from the shower for staff to talk to him. Sgt. Large recalls that when he went to the shower area, Jordan was agitated and stated, "You bitches don't remember me from C building. I go hard and you are about to get some." Due to this statement,

Sgt. Large placed an institutional disciplinary charge against Jordan for threatening bodily harm. (Large Aff. ¶ 5 & Encl. A)

The pendency of the disciplinary charge and the perceived threat towards prison staff required that correctional officers transport Jordan from D-6 to the D-3 pre-detention housing unit in full restraints. During the transport, two officers walked on either side of Jordan while Sgt. Large, as a supervisor, followed several feet behind them. Sgt. Large states he "never touched, kicked, or otherwise placed his hands on Jordan" and claims that video footage from the D-3 and D-6 security cameras corroborates his account of events, including that he never had a handheld video camera and that the group remained in video surveillance at all times. (Large Aff. ¶¶ 6, 8) Sgt. Large alleges that the video footage shows "Jordan's gait remained normal and unaffected throughout the entire escort." (Mot. Summ. J. at 4, Dkt. No. 18) Sgt. Large contends that Jordan never asked to see a nurse, did not file an emergency grievance, and did not seek medical attention for any testicular injury during pill pass that day or at any time before July 20, 2016. (Large Aff. ¶ 9) The initial physical examination on July 20, when Jordan first complained of having been kicked, did not reveal any testicular injuries. (*See* Phipps Aff. ¶ 11)

Sgt. Large argues that Jordan's excessive force claim is meritless because it is directly contradicted by the surveillance video footage and that Sgt. Large is nonetheless entitled to qualified immunity.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality,… [o]nly disputes over

3

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative[.]" *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.[1] *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The

---

[1] In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Further, as a general rule, the nonmoving party must respond to a motion for summary judgment with affidavits, or other verified evidence. *Celotex*, 477 U.S. at 324; *see also Williams*, 952 F.2d at 823. An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, a party cannot ward off summary judgment with an affidavit or verified complaint "based on rumor or conjecture." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *see also Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (summary judgment may be appropriate in cases where the allegations in the verified pleading are merely conclusory). Here, Jordan has filed a verified complaint, and the material facts as set forth in the complaint are sufficiently corroborated by Sgt. Large's record. Thus, the court considers the factual allegations set forth in Jordan's complaint as evidence. However, Jordan has responded to Sgt. Large's motion for summary judgment by filing an unverified brief in opposition with an attached witness affidavit. (*See* Dkt. No. 21) Because the brief in opposition to which the

evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

### B. Excessive Force

The parties could not more sharply dispute the facts as to what occurred. Jordan alleges that Sgt. Large kicked his testicles from behind while he was being transported in full restraints, despite not displaying any physical or aggressive behavior. Alternatively, Sgt. Large contends that the surveillance video confirms that he never touched or kicked Jordan. The court finds that genuine disputes of material facts preclude summary judgment and, therefore, denies Sgt. Large's motion as to this claim.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). To determine whether a prisoner has stated a cognizable excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Whether force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). In other words, harming an inmate without provocation and for the purpose of causing harm is sufficient to state an excessive force claim. *Wilkins*, 559 U.S. at 34.

---

affidavit is attached is not verified, the court cannot give consideration to the factual allegations contained therein. Nonetheless, the brief in opposition repeats, for the most part, the facts set forth in the verified complaint. As such, the court will view Sgt. Large's facts in the record as disputed.

Sgt. Large relies heavily upon the surveillance video footage, contending that it is "plain" that he did not touch Jordan and that Jordan's version of events are "directly and unquestionably contradicted" by the record. "[W]hen documentary evidence 'blatantly contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment." *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *accord Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Specifically, a plaintiff's account should not be rejected when video evidence merely "offers *some* support for [the other side's] version of events." *Witt*, 633 F.3d at 276 (emphasis in original). Rather, the video evidence controls only where it "quite clearly contradict[s]" plaintiff's version of events. *Id*. In other words, the articulated standard for video evidence "does not abrogate the proper summary judgment analysis, which [] 'usually means adopting…the plaintiff's version of the facts.'" *Id*. (quoting *Scott*, 550 U.S. at 378).

In the present case, the video footage does not "clearly" or "blatantly" contradict Jordan's account of the incident. *Scott*, 550 U.S. at 378, 380. In fact, the video footage is inconclusive in resolving the parties' factual disputes. First, Jordan alleges that he was kicked by Sgt. Large when he was out of camera range while exiting the D-6 building. When the group exits the D-6 vestibule, and is shown stepping outside to walk from the D-6 to the D-3 building, the viewer cannot see whether Sgt. Large kicks Jordan from behind as the video only captures the group from the front and side. (*See* Video Recordings, D456 entrance 2:05:05 through 2:05:14 pm, D Yard Static 2:05:14 through 2:05:38 p.m.) Further, the evidence of this portion of the video is ambiguous due to the unclear quality of the video, the inability to reliably zoom in on pertinent images, and the difficulty in discerning Sgt. Large's alleged movements from the distance of the

surveillance camera. *Cf. Iko*, 535 F.3d at 231 (finding that the video evidence undisputedly depicted the general sequence of events).

Here, the video footage does not unequivocally resolve the different versions of events so as to preclude summary judgment. There are sufficient factual disputes; thus, Jordan has met his burden of producing "evidence . . . [that] create[s] [a] fair doubt" and not just "wholly speculative assertions" as to whether defendant used excessive force. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Likewise, the existence of factual disputes as to whether Sgt. Large used excessive force precludes him from invoking the protection of qualified immunity.[2] *Newkirk v. Enzor*, 674 F. App'x 276, 280 (4th Cir. 2017) ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any factual dispute regarding the actual conduct of the defendant[].") (quoting *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 180 (4th Cir. 1998)). For these reasons, the court denies Sgt. Large's motion for summary judgment on this claim.

**C. Retaliation**

Jordan alleges that Sgt. Large broke his property and used excessive force "because" Jordan filed a prison grievance and lawsuit against prison officials. Construing Jordan's pleading liberally and drawing all reasonable inferences in favor of him, the court construes this allegation as a claim for retaliation. *See Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009)

---

[2] "[Q]ualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). In deciding whether defendant is entitled to qualified immunity, the court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id.* at 881. A "court 'may address these two questions in the order…that will best facilitate the fair and efficient disposition of each case.'" *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (alteration in original) (quoting *Raub*, 785 F.3d at 881). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.*

(federal courts must construe *pro se* pleadings liberally to allow for the development of a potentially meritorious claim). To state a claim of retaliation under Section 1983, a plaintiff "must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (identifying substantially similar requirements for a First Amendment retaliation claim by an inmate alleging retaliation for filing grievances against prison staff).

First, Jordan alleges that he engaged in protected First Amendment activity, which includes the right for an inmate "to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). "The First Amendment protects the right to petition the Government for a redress of grievances[.]"[3] *Martin v. Duffy*, 858 F.3d 239, 250 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448) (4th Cir. 2004)). Even though "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). As such, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, by alleging that he filed a grievance and

---

[3] "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

8

lawsuit against a prison official, Jordan has sufficiently pleaded he engaged in protected conduct. *Id*.

Second, Jordan has adequately pleaded that Sgt. Large's use of excessive force and breaking of his property adversely affected his First Amendment rights. *Constantine*, 411 F.3d at 499. "[F]or purposes of a First Amendment retaliation claim under [Section] 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine*, 411 F.3d at 500) (internal brackets and quotation marks in original). Jordan's assertion that Sgt. Large broke his headphones and radio and kicked him in the testicles in retaliation for filing a prison grievance satisfies this requirement. *See Martin*, 858 F.3d at 249; *see also Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (holding plaintiff stated a claim where he alleged prison officials destroyed property and assaulted him in retaliation for filing grievance and lawsuit).

Finally, Jordan alleges a causal connection between the First Amendment activity and the alleged retaliatory actions. *Constantine*, 411 F.3d at 501. To demonstrate a causal connection, Jordan can use circumstantial evidence to show that the defendant was aware of the First Amendment activity and that the retaliation occurred within "some degree of temporal proximity" to that activity. *Constantine*, 411 F.3d at 501. Here, Jordan alleges that Sgt. Large approached him and stated he was authorized by Lt. Day to break his headphones and radio "because" Jordan filed a prison grievance and lawsuit against other Red Onion employees. (Compl. at 3, 4, ECF No. 1) Sgt. Large contends that Jordan's personal property was contraband and needed to be confiscated on that basis alone. While the record does not establish precisely when Jordan filed his grievance, Jordan's allegation that Sgt. Large retaliated against him

9

"because" he filed a grievance is sufficient to allow a reasonable fact finder to conclude a causal connection. *See Martin*, 858 F.3d at 250 (citing *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012)). Accordingly, Sgt. Large has not demonstrated that he is entitled to summary judgment on this claim as there remain genuine disputes of material facts. Moreover, these same factual disputes preclude Sgt. Large's argument that he is entitled to qualified immunity on Jordan's retaliation claim. *Newkirk*, 674 F. App'x at 280.

### III. CONCLUSION

For the reasons stated herein, Sgt. Large's motion for summary judgment is denied, and the matter will be set for a jury trial.

An appropriate order will be entered this day.

Entered: March 5, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge